17-1479
Doe v. Kogut

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand nineteen.

PRESENT:  DENNIS JACOBS,
          RICHARD J. SULLIVAN,
                    <u>**Circuit Judges**</u>,
          EDWARD R. KORMAN,[*]
                    <u>**District Judge**</u>.

- - - - - - - - - - - - - - - - -X

JANE DOE,
         <u>**Plaintiff-Appellant**</u>,

        **-v.-**                       **17-1479**

---

[*] Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

1

**STEVEN KOGUT,**

        <u>**Defendant-Appellee.**</u>

- - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANT:** | Paul Verner, Verner Simon, New York, NY. |
| **FOR APPELLEE:** | Steven Kogut, <u>pro se</u>, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Netburn, <u>M.J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Jane Doe sued Steven Kogut for violations of state tort law, alleging that Kogut had abused her during their romantic relationship. The parties reached a settlement at a conference with a magistrate judge. After reciting the terms of the settlement on the record, the magistrate judge asked both parties if they understood and accepted the terms of the settlement and understood that acceptance constituted an oral contract; both parties affirmed these statements. Doe later repudiated the settlement, stating that the oral contract was not binding and she had been under duress; Kogut moved to enforce the agreement. The magistrate judge granted Kogut's motion, reasoning that the oral agreement was binding and that Doe was not under duress at the time of the settlement conference. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review a district court's factual conclusions related to a settlement agreement, such as whether an agreement exists or whether a party assented to the agreement, under the clearly erroneous standard of review." <u>Omega Eng'g, Inc. v. Omega, S.A.</u>, 432 F.3d 437, 443 (2d Cir. 2005) (citing <u>Ciaramella v. Reader's</u>

<u>Digest Ass'n, Inc.</u>, 131 F.3d 320, 322 (2d Cir. 1997)).   "We review <u>de novo</u> a district court's legal conclusions with respect to its interpretation of the terms of a settlement agreement and its interpretation of state law."   <u>Id.</u> (internal citation omitted).

## I.      Absence of a Writing

"A settlement agreement is a contract that is interpreted according to general principles of contract law."[1]   <u>Powell v. Omnicom</u>, 497 F.3d 124, 128 (2d Cir. 2007).   The agreement need not be reduced to writing if it is entered into voluntarily on the record in open court.   <u>Id.</u> at 129.   To determine if parties intend to be bound by an oral contract, "[t]he court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."   <u>Winston v. Mediafare Entm't Corp.</u>, 777 F.2d 78, 80 (2d Cir. 1985). "No single factor is decisive."   <u>Ciaramella</u>, 131 F.3d at 323.

**1.**      Here, the parties did not expressly reserve their rights not to be bound by the oral contract.   At the settlement conference, the magistrate judge stated that by acceptance on the record, the parties were agreeing to be bound by the oral contract.   Neither party objected to this statement and both affirmed that they understood they would be bound by the oral agreement.   Doe argues that the parties and the magistrate judge expected a written contract because the magistrate judge stated that the agreement should be reduced to writing. However, although the parties "agreed that the formal settlement documents [would] incorporate the . . . [oral] terms and conditions," they thus suggested that the settlement's reduction to writing was only a formality.   <u>Powell</u>, 497 F.3d at 130.   Here, the magistrate judge expressly stated that any later writing would be

---

[1] Although this is a diversity action, there is no material difference between New York's contract law and federal common law.   <u>Ciaramella</u>, 131 F.3d at 322.

3

merely a memorialization of the material terms discussed at the conference and neither party objected.   This factor therefore favors enforcement of the contract.

2.      The second factor--partial performance--is neutral, since Kogut's ability to perform his end of the settlement was thwarted by Doe's change in counsel.   After the settlement conference, Kogut's attorney ordered a transcript of the conference, sent a copy to Paul Campson, Doe's then-attorney, and began preparing a written version of the settlement.   However, less than a week after the conference, Campson advised the district court that Doe had discharged him; and he confirmed again a few days later that he was being fired by Doe and was unsure if he had the authority to withdraw a state family court petition for a restraining order against Kogut.   The magistrate judge ordered the parties to appear for a conference, at which time another attorney, Paul Verner, began writing to the court as Doe's new attorney.   Although Doe argues that Kogut could have performed because Campson was still her attorney of record until he was relieved on November 30, 2016, the record reflects that Campson believed he lacked the authority to represent Doe and settle the claims as early as November 9, 2016.   Therefore, the fact that Kogut did not ultimately draft a written version of the settlement or tender $10,000 to Doe does not necessarily show that the parties intended not to be bound by the oral terms.   At best for Doe, this factor is neutral.

3.      The district court also properly concluded that there were no open material terms.   The agreement, as outlined by the magistrate judge, covered monetary compensation, a mutual non-disparagement clause, and required Doe to withdraw the family court petition by November 10, 2016.   When asked by the magistrate judge, Doe's attorney confirmed that no material terms were omitted. Doe argues that she was unable to withdraw her family court petition due to circumstances beyond her control--the petition had been transferred to the Integrated Domestic Violence court--and therefore the parties could not have reached an agreement relating to it.   However, Kogut's attorney stated at the settlement conference that he understood that certain criminal law issues were beyond Doe's control, and Kogut entered into the settlement regardless of this

4

issue.   Thus, the record reflects that the parties considered whether the intervention of the criminal justice system would affect any of the terms of the agreement and concluded that Doe would be bound as to actions within her control.   The fact that Doe later could not withdraw her petition does not bear on whether the parties settled all of the terms, but rather on her ability to perform her obligations.   See Powell, 497 F.3d at 130 ("This argument . . . misses the point: They are relevant to performance of the settlement rather than assent to its terms.").   Accordingly, this factor favors enforcement.

4.      Finally, the fourth Winston factor favors enforcement.   "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court."   Ciaramella, 131 F.3d at 326 (citing C.P.L.R. § 2104). That is precisely what happened here--the parties settled their dispute on the record before the magistrate judge.   Doe now argues that the settlement was sufficiently complex to require a written contract.   However, the parties' settlement was not particularly complex--Doe released her claims against Kogut and agreed to halt, to the extent possible, proceedings in criminal and family court in exchange for a monetary payment and a mutual non-disparagement agreement.   Accordingly, this factor favors enforcement.

In sum, because the parties did not reserve their rights not to be bound by the oral settlement, left no material terms open for further negotiation, and reached their agreement on the record in open court, three of the four Winston factors favor enforcement of the oral settlement agreement.   The remaining factor is neutral.   Therefore, the parties intended to be bound by the oral agreement.

## II.    Duress

Doe argues that even if the parties intended to be bound by the oral settlement agreement, she entered into it under duress; therefore, it is not enforceable.   "Although it is settled that a contract of settlement, if valid in itself, is final, . . . a settlement contract or agreement, like any other, may be attacked on the grounds that it was procured by fraud, duress or other unlawful means."

5

First Nat'l Bank of Cincinnati v. Pepper, 454 F.2d 626, 632 (2d Cir. 1972) (internal citation, quotation marks, and emphasis omitted).   In New York, "[a] contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will."   Id. (quoting Austin Instrument, Inc. v. Loral Corp., 29 N.Y.2d 124, 130 (1971)).

Doe contends she was under duress when she agreed to the settlement because the magistrate judge told her that Kogut threatened to report her to the IRS if she did not settle.   But the magistrate judge did not recall conveying this threat from Kogut; rather, she conveyed that Kogut planned to introduce tax records at trial to attack Doe's credibility.   Further, Doe offered no statement from Campson, who had been present with Doe at the negotiations, supporting this claim.   Verner, who spoke with Campson about the settlement conference, also did not mention that Campson witnessed the magistrate judge deliver a threat.   Given that the magistrate herself did not recall delivering any threat, the magistrate did not err by concluding that Doe was not threatened by Kogut.   See Principal Nat'l Life Ins. Co. v. Coassin, 884 F.3d 130, 138 (2d Cir. 2018) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting Anderson v. Bessemer City, 470 U.S. 564, 574 (1985))).

Doe asserts duress on two other grounds.   First, Doe maintains that her psychological state at the time of the settlement conference was fragile because she had undergone a psychiatric examination the day before, during which the psychiatrist physically assaulted her, and she suffered from Post-Traumatic Stress Disorder.   She also claimed that she felt "demoralized, exhausted, abandoned, and defeated" and was "sequestered" in a separate room without her attorney. But mental fragility is insufficient to show duress.   See Blatt v. Manhattan Med. Grp., P.C., 131 A.D.2d 48, 51 (1st Dep't 1987) ("mere depression, serious or otherwise," is insufficient to invalidate an otherwise valid contract).

Doe also argues that Campson had been unprepared and she had been

6

"abandoned" by her attorneys because a prior attorney had withdrawn shortly before the settlement conference and Doe had no opportunity to discuss the case with Campson prior to the conference. But because Doe did not offer any evidence that her attorney's lack of preparedness "preclude[ed] the exercise of [her] free will," her argument is insufficient to show duress. <u>First Nat'l Bank of Cincinnati</u>, 454 F.2d at 632 (quoting <u>Austin Instrument</u>, 29 N.Y.2d at 130). Therefore, the oral settlement is valid and the magistrate judge did not err by enforcing the agreement.

We have considered all of Doe's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7